UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-1988(DSD/AJB)

George Flora,

Plaintiff,

v. **ORDER**

Firepond, Inc., a
Delaware corporation,

Defendant.

Kevin O'C Green, Esq. and Green Law Office, Suite 130, 227 East Main Street, P.O. Box 996, Mankato, MN 56002, counsel for plaintiff.

Thomas F. Nelson, Esq., Todd A. Noteboom, Esq., Monica L. Davies, Esq. and Leonard, Street & Deinard, 150 5th Street South, Suite 2300, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court on two motions of plaintiff George Flora ("Flora") to amend the complaint [Doc. Nos. 18 & 24] and the motion of defendant Firepond, Inc. ("Firepond") for judgment on the pleadings or, in the alternative, for summary judgment [Docket No. 13]. For the following reasons, the court will grant plaintiff's first motion to amend and deny plaintiff's second motion to amend and grant in part and deny in part defendant's motion for summary judgment.

FILED 7-10-02
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. ______
Deputy Clerk's Initials ______

**BACKGROUND**

Firepond is a Delaware corporation doing business in Minnesota that provides software and services to a variety of industries. Plaintiff is the owner and sole shareholder of Professional Placement Services, Inc. ("PPS"), a company that provided personnel placement services to Firepond for several years.

In 1997, plaintiff expressed an interest in acquiring stock options as compensation for his work rather than the cash fees that he had previously received from defendant. In February 1998, plaintiff met with senior representatives of Firepond to discuss the possibility of plaintiff acquiring options to purchase Firepond stock in lieu of cash compensation. The details of what was discussed at this meeting are in dispute. Plaintiff asserts that he was told that the options would vest immediately and that no other limitations were addressed. (Pl.'s Mem. at 2-3.) Defendants assert that when Flora inquired as to what restrictions might be placed on the stock options, that the two Firepond representatives disagreed about what restrictions, if any, would apply to Flora, since each representative had a different recollection of how Firepond's employee stock option plan operated and when the options would vest. (Def.'s Mem. at 4.)

The parties do not dispute that defendant offered Flora 150,000 shares of stock at $2.63 per share in exchange for Flora placing $1.5 million in first year salaries and signing bonuses.

Flora was to receive the first half of the options immediately and the balance when half of the placements were completed.

In May 1998, the first stock option agreement was issued between plaintiff and defendant. That agreement granted plaintiff the option to purchase 75,000 shares of Firepond stock at $2.63 per share. Plaintiff noticed that the agreement contained terms and conditions that were not specifically discussed during the February 1998 meeting. After unsuccessfully trying to negotiate the removal of these terms and conditions, Flora signed the agreement and agreed to the restrictions. Firepond asserts that he signed the modified agreement because plaintiff was determined to acquire the stock options. Plaintiff asserts that he only signed the modified agreement because he had completed 61 percent of the placements and believed that he was facing a "take it or leave it" scenario if he did not sign. (Pl.'s Mem. at 3.)

In November 1998, plaintiff received a second stock option agreement. That agreement contained substantially the same terms as the May 1998 agreement and granted plaintiff stock options to purchase an additional 75,000 shares. Plaintiff signed that agreement. Pursuant to the terms of both agreements, the stock options were subject to the terms and conditions set forth in Firepond's 1997 stock plan. Plaintiff received no additional or different consideration for signing the option agreements.

By late 1999, in preparation for the Firepond initial public offering ("IPO"), the investment banking firm that was underwriting the IPO, imposed several requirements on Firepond. Among them was a requirement that all stockholders, option holders, and warrant holders sign a lockup agreement prohibiting the sale of Firepond stock for 180 days after the effective date of the IPO. Thomas Caretta, the general counsel for Firepond, and Christian Misvaer, a staff attorney for Firepond, were notified of the lockup agreement and were told by investment banker Jeffrey Becker that this was a common requirement imposed on corporations prior to an IPO to help stabilize the stock price through the early period, that "time was of the essence," and that all shareholders, option holders, and warrant holders should sign the lockup agreement. (See Becker Aff. ¶ 4.)

Misvaer contacted plaintiff on November 8, 1999, and communicated the underwriters's requirements. Plaintiff asserts that he objected to the imposition of a lockup agreement stating that he had made no such agreement in February 1998. Days later, following plaintiff's objection, Misvaer again contacted plaintiff and informed him that all stockholders, option holders, and warrant holders were required to sign the lockup agreement. Plaintiff also alleges that he was told that if he did not sign the lockup agreement that the IPO could not proceed. (See Pl.'s Mem. at 4.) Plaintiff later received a letter from Firepond confirming the

mandatory nature of the lockup agreement. (Id.) Plaintiff signed the lockup agreement on or about November 11, 1999.[1]

Defendant asserts that each of Firepond's officers and directors and most of its other stockholders, option holders, and warrant holders agreed to sign the lockup agreement.[2] Firepond commenced its IPO on February 4, 2000.

Firepond stock was offered at $22 per share. At the close of the first day of trading, Firepond's stock price reached a closing price of more than $100 per share. (See Davies Aff., Ex. C.) After the 180 day lockup period had expired, the share price had dropped to $17.75 per share. (Id.) Plaintiff did not sell his stock at the expiration of the lockup period. When plaintiff did sell his Firepond stock, it was trading at below $1 per share. (Id.)

Plaintiff brought this law suit against defendant alleging that it made a number of material misrepresentations in inducing him to sign the lockup agreement, violated federal and state

[1] In the agreement was language that acknowledged the underwriters's right to "waive any provisions of this lockup agreement without notice to any third party."

[2] While a small number of stockholders and option holders refused to sign the lockup, the investment banking firms underwriting Firepond's IPO ultimately elected to proceed despite the small number of holdouts. According to defendant, it is common for a small number of stockholders and option holders to refuse to sign lockup agreements when a company goes public and it is common for underwriters to proceed with the IPO provided that the number of shares not subject to lockup is small. (See Becker Aff. ¶ 6.)

securities laws, and breached the terms of the employment contract between parties.

Plaintiff also has moved to amend his complaint to add claims of promissory and equitable estoppel, detrimental reliance, and a claim under § 17(a) of the Securities Act. Defendant now moves for a judgment on the pleadings or, in the alternative, for summary judgment. For the following reasons, the court will grant plaintiff's first motion to amend, deny plaintiff's second motion to amend, and will grant in part and deny in part defendant's motion.

**DISCUSSION**

**I. Plaintiff's Motion to Amend**

Plaintiff brings two motions to amend his complaint to add several new legal claims.

**A. First Motion to Amend**

Regarding the first motion to amend, plaintiff filed it within the time period proscribed by the pretrial scheduling [Doc. No. 7] order for bringing motions to amend. Defendant's primary objection to it involves the newly added a claim under § 17(a) of the 1933 Securities Act.[3] Firepond asserts that there is no private cause

---

[3] The court also notes that defendant objects to the revision of some of plaintiff's factual allegations asserting that they impact the statute of limitations defense. However, based upon the court's decision below to dismiss the federal securities act (continued...)

of action under § 17(a) of the Securities Act in this circuit. The court agrees. See Deviries v. Prudential-Bache Securities, Inc., 805 F.2d 326, 328 (8th Cir.1986) ("the established rule of this Circuit is that there is no private right of action for violations of § 17(a) of the 1933 Act") (citing Shull v. Dain, Kalman & Quail, Inc., 561 F.2d 152, 159 (8th Cir. 1977)). Plaintiff's first motion to amend will be therefore granted. However, the § 17(a) claim must be dismissed as a matter of law.

**B. Second Motion to Amend**

Plaintiff also brings a second motion to amend his complaint seeking to add claims for detrimental reliance and promissory and equitable estoppel. The court will deny the second motion to amend on two bases.

First, the second motion is denied because it is untimely.[4] Second, the claims of promissory estoppel, detrimental reliance, and equitable estoppel, that plaintiff seeks to add, are legally defective. The court is unaware of any cause of action in Minnesota for "detrimental reliance." See Nicollet Restoration, Inc. v. City of St. Paul, 533 N.W.2d 845, 846 (Minn. 1995).

---

[3](...continued)
violation on that basis, the court believes that it need not specifically address this objection since it is rendered moot.

[4] The pretrial scheduling order set a March 15, 2002 deadline for the filing of motions. While the first motion to amend was filed on March 15, 2002, before the expiration of the deadline, the second motion to amend was filed after this deadline on March 27, 2002. [See Doc. No. 24.]

Promissory estoppel is inapplicable in cases where, as here, a contract exists between the parties. See UFE, Inc. v. Methode Electronics, Inc., 808 F. Supp. 1407, 1415 (D. Minn. 1992). The equitable estoppel claim also fails. Equitable estoppel is not a theory of recovery under Minnesota law and may not be asserted as a means to obtain contract damages. See Snyder v. City of Minneapolis, 441 N.W.2d 781, 790-791 (Minn. 1989) (discussing that equitable estoppel is "a shield, not a sword").

Accordingly, since plaintiff's request to assert the additional claims are time-barred and are legally deficient, plaintiff's second motion to amend is denied.

## II Defendants Motion to Dismiss or, Alternatively, for Summary Judgment

### A. Legal Standard

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint on various grounds, including failure to state a claim up which relief can be granted. In considering a Rule 12(b)(6) motion to dismiss, the court takes all facts alleged in plaintiff's complaint as true. See Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). When however, matters outside the pleadings are presented on a Rule 12(b)(6) motion and are not excluded by the court, the court must convert the motion to one for summary judgment. See Fed. R. Civ. P. 12(b)(6); Hamm v. Rhone-Poulenc Rorer Pharm., Inc., 187 F.3d 931, 948 (8th Cir. 1999). In the present matter, because the court

has considered affidavits outside the pleadings, in particular the affidavits of George Flora and Jeffrey Becker, the court will treat this as a motion for summary judgment.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Fed. R. Civ. P. 56(c). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 250. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support

each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. See id. at 322-23. With this standard at hand, the court turns to consider the defendant's motion.

**B. Misrepresentation Claims**

Plaintiff alleges in his amended complaint both negligent misrepresentation and common law fraudulent misrepresentation. Plaintiff has filed a motion for an extension pursuant to Fed. R. Civ. P. 56(f) asserting that summary judgment is premature. Rule 56(f) provides that "[s]hould it appear ... that the [opposing] party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may ... order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had... ." Fed. R. Civ. P. 56(f). The parties have not conducted discovery regarding these claims. Moreover, in addition to the underdeveloped record, the parties have not had an opportunity to brief the claim of negligent misrepresentation, given plaintiff's amended complaint.

As this Rule 56(f) extension request relates to the claims of negligent misrepresentation and common law fraudulent misrepresentation, the court agrees with plaintiff. The parties

here have not had adequate time for discovery.[5] Thus, the court will deny defendant's motion as it pertains to the misrepresentation claims since it is premature and will allow the parties to pursue further discovery on these claims.

**C. Federal Securities Act Claims**

Plaintiff also alleges that Firepond violated § 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934. Defendant seeks dismissal based on the statute of limitations. A claim brought under § 10(b) of the Securities Exchange Act and Rule 10b-5 must be filed no later than one year after the discovery of facts putting the plaintiff on "inquiry notice" of the alleged violation. 15 U.S.C. § 78(i)(e); Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 364 (1991). A plaintiff in a federal securities case is deemed to have discovered fraud for purposes of

---

[5] For a misrepresentation to be actionable, it is fundamental that the statement must have been false at the time it was made. See Popp Telecommunications v. Am. ShareCom, Inc., 210 F.3d 928, 935 n. 11 (8th Cir. 2001); see also McAnally v. Gildersleeve, 16 F.3d 1493, 1497 (8th Cir. 1994)(providing that in order to prove a claim of fraud, the plaintiff must demonstrate that defendant made a material false statement knowing that it was false at the time made); Florenzano v. Olson, 387 N.W.2d 168, 174, n. 3 (Minn. 1986) (quoting Restatement (Second) of Torts § 552) (holding that Minnesota has adopted the Restatement definition of negligent misrepresentation which requires the supplying of false information to be actionable and "a misrepresentation is made negligently when the misrepresenter has not discovered or communicated certain information that the ordinary person in his or her position would have discovered or communicated."). The court believes that the record needs to be further developed in order for the court to make a determination of whether summary judgment is appropriate on the claims of negligent misrepresentation and common law fraudulent misrepresentation.

triggering the statute of limitations when a reasonable investor of ordinary intelligence could have discovered the existence of the fraud. Dodds v. Cigna Sec., Inc., 12 F.3d 346, 350 (2nd Cir. 1993). The test is an objective one appropriately decided by the court. Id. at 352; Giant Group Ltd. v. Sands, 142 F. Supp. 2d 503, 507 (S.D.N.Y. 2001)(the one year statute of limitations for claims brought under Rule 10b-5 begins to run when the plaintiff is put on "inquiry notice").

Defendant asserts that plaintiff had knowledge of facts giving rise to his claim no later than spring of 2000 when he purportedly began to hear "stories" about a major stockholder who did not sign the lockup and was able to sell Firepond stock within weeks of the IPO. Plaintiff counters that any rumors he heard at that time did not trouble him because he trusted the experience and reputation of the underwriter. The court is not persuaded by plaintiff's assertion and believes that the record adequately demonstrates that plaintiff had knowledge of facts that would have put a reasonable investor on notice of the allegedly fraudulent conduct in spring of 2000. (See, e.g., Pl.'s Mem. at 5 ("vague rumors arose in conversations with others" about the sale of Firepond stock at the time of the IPO); Am. Compl. ¶ 70 ("[i]n the weeks following the initial public offering Flora begin to hear stories of one of CWC's founders ... who was able to sell considerable amounts of stock on the [IPO]."); Flora Aff. ¶ 5 ("[s]hortly after FirePond went public

[plaintiff] did hear some vague rumors in conversations with others ... that someone ... had been allowed to sell shares at the initial public offering of Firepond Stock.").) See Dodds, 12 F.3d at 350 ("when the circumstances would suggest to an investor of ordinary intelligence the probability that she had been defrauded, a duty of inquiry arises, and knowledge will be imputed to the investor who does not make such an inquiry.").

The court thus concludes that the federal securities act violation claim is untimely. Accordingly, defendant is entitled to summary judgment on the basis of the statute of limitations and defendant's motion is granted as it pertains to the federal securities claim.

**D. State Securities Violation Claims**

Plaintiff also alleges that Firepond engaged in unlawful conduct in connection with the sale of securities pursuant to Minn. Stat. § 80A.23(2), by leading plaintiff to believe in February 1998, that the stock options were unrestricted and immediately transferrable. Defendant similarly asserts a statute of limitations defense arguing that plaintiff's claims must be dismissed since they are untimely.

Any claim brought under this section of the Minnesota securities laws must be filed no later than three years after the occurrence of the act or transaction constituting the violation. See Minn. Stat. § 80A.23(7)(2001). Defendant argues that the

statute of limitations began to run in May 1998 when plaintiff received the first of two stock option agreements that contained language that directly contradicted what he alleges that he had been told in February 1998, that the stock options were unrestricted.

The court agrees with defendant. The record, including plaintiff's complaint and affidavit, support the determination that the plaintiff was reasonably on notice in May 1998, when he learned that the stock options offered to him differed significantly from what he claims had been represented to him by defendant in February 1998. (See Am. Compl. ¶ 37; Flora Aff. ¶ 17.) Thus, for plaintiff's claim to be timely, it must have been filed by May 2001. By waiting until October 31, 2001 to file his complaint, plaintiff's claim is untimely and must be dismissed.

**E. Breach of Contract**

Defendant asserts that plaintiff's breach of contract claim must be dismissed since it is based on an alleged oral contract that was superseded and replaced by the written stock option agreements willingly signed by Flora.[6]

---

[6] Under the summary judgment analysis, the court has ignored the obvious problems presented by the statute of frauds and the parol evidence rule even assuming plaintiff's version of the facts is true. See, e.g.,. Norwest Bank Minnesota, N.A. v. Midwestern Machinery Co., 481 N.W.2d 875, 881 (Minn. Ct. App. 1992)("Where a written agreement is integrated, no prior oral agreement relating to that agreement may vary its terms."); Apple Valley Red-E-Mix, Inc. v. Mill-Winfield Eng'g Sales, Inc., 436 N.W.2d 121, 123 (Minn. (continued...)

After reviewing the undisputed record, the court agrees. It is well settled that a subsequent contract completely covering the same subject matter and made by the same parties subsumes the earlier agreement. See Housekeeper Pub. Co. v. Swift, 97 F. 290, 294 (8th Cir. 1899); Nat'l Labor Rel. Bd. v. Int'l Union of Operating Eng'rs., 323 F.2d 545, 548 (9th Cir. 1963) ("it is a well settled principle of law that the later contract supersedes the former contract as to inconsistent provisions" where the contracts cover the same subject matter and involved the same parties). It is also well established that parties to a contract may alter terms of their contract by mutual consent without new or independent consideration. Olson v. Penkert, 90 N.W.2d 193, 203 (Minn. 1958) (parties to a contract may "alter their contract by mutual consent, and this requires no new consideration, for it is merely the substitution of a new contract for the old one, and this is of itself a sufficient consideration for the new"); Lehman v. Stout, 112 N.W.2d 640, 645 (Minn. 1961) (same); Brooksbank v. Anderson, 586 N.W.2d 789, 793 (Minn. Ct. App. 1999) (consideration for the first agreement attaches to the modified contract).[7]

---

[6](...continued)
Ct. App. 1989)("Pursuant to general contract law, the terms of a final and integrated written expression may not be contradicted by parol evidence of previous 'understandings and negotiations ... for the purpose of varying or contradicting the writing'")(quoting 3A Corbin, Corbin on Contracts, § 573 (1960)).

[7] The court believes that plaintiff's reliance on cases that (continued...)

Flora consented to terms of the subsequent stock option agreements when he signed them. Put differently, in spite of his assertion that he initially objected to the restriction terms that were in the agreements because they differed from what he was allegedly told during the February 1998 discussion with defendant, he decided to accept them when he willingly signed the stock option agreement. And he willingly signed the agreements not just once, but on two different occasions. Plaintiff thus willingly accepted the restriction terms that were contained in those stock option agreements, and those terms replace any alleged oral terms on which plaintiff now attempts to assert a claim of breach.

Since plaintiff shows no other basis to support his claim of breach, his claim fails and the court must grant defendant's motion for summary judgment as it relates to the breach of contract claim.

**F. Other Claims**

The court also notes that there are several claims made by plaintiff under theories of tortious interference with contract [Count XIV][8] and under the Minnesota Consumer Fraud Statute [Count VIII] that neither parties address in their briefs in light of the

---

[7](...continued) involving unilateral employer modifications to employment contracts is misplaced in light of the present facts.

[8] The court notes that plaintiff's amended complaint mistakenly contains two counts identified as "Count XIV." One asserts the § 17(a) Securities Act violation and the other alleges the tort of interference with contract. (See Amended Compl. at 46-47.)

amended complaint.[9] The court is hesitant to address these claims absent further argument from the parties and will deny defendant's motion as it may relate to these claims.[10]

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Plaintiff's first motion to amend [Doc. No. 18] is granted;

2. Plaintiff's second motion to amend [Doc. No. 24] is denied;

3. Defendant's motion for summary judgment [Doc. No. 13] is granted as it applies to Count V (breach of contract), Count VI (the state securities act violation claim), Count X (the federal securities act violation claim § 10(b) and Rule 10b-5), and Count XIII (the federal securities act violation claim § 17(a)); these claims are dismissed with prejudice; and

4. Defendant's motion is denied as it applies to Count I

---

[9] The court also has not ruled on any counts that separately relate to defendant Robertson Stephens, Inc., in this proceeding, absent a motion from that party.

[10] The court is also unwilling to make a specific determination of damages at this preliminary stage of this action. The court believes that the question of damages is best reserved for a later point in this litigation, if necessary. Accordingly, the court will deny defendant's request that a finding on damages be made.

(negligent misrepresentation), Count III (common law fraudulent misrepresentation), Count VIII (Minnesota Consumer Fraud Statute), and Count XIV (tortious interference with contract).[11]

Dated: July 10, 2002

David S. Doty, Judge
United States District Court

[11] The court again notes that it has not considered in this order Counts II, IV, VII, IX, XI, XII, the first XIV, since they relate to defendant Robertson Stephens, Inc., a party that has no motion presently before the court.