UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

George Flora, Civil No. 01-1988(DSD/AJB)

Plaintiff,

v. **ORDER**

Firepond, Inc., a Delaware Corporation and Robertson Stephens, Inc., a Massachusetts Corporation,

Defendants.

--------------------------------

Jay Syverson, Civil No. 02-1199(DSD/FLN)

Plaintiff,

v.

Firepond, Inc., a Delaware Corporation and Robertson Stephens, Inc., a Massachusetts Corporation,

Defendants.

Kevin O'C Green, Esq., Green Law Office, P.O. Box 996, Mankato, MN 56002 and Kenneth R. White, Esq., White Law Office, 325 South Broad Street, Suite 203, Mankato, MN 56001, counsel for George Flora and Jay Syverson.

Thomas F. Nelson, Esq., Todd A. Noteboom, Esq., Monica L. Davies, Esq., and Leonard, Street & Deinard, 150 South Fifth Street South, Suite 2300, Minneapolis, MN 55402, counsel for defendant Firepond.

Karen E. Wilson, Esq., Kerry L. Bundy, Esq. and Faegre & Benson, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402, counsel for defendant Robertson Stephens, Inc.

FILED 4·29·03
Richard D. Sletten, CLERK
Judgment Ent'd. 4·29·03
Deputy Clerk's Initials ______

This matter is before the court upon the motions of defendants for judgment on the pleadings and dismissal pursuant to Rules 12(c) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Also before the court are the motions of plaintiffs for deferral of summary judgment proceedings pursuant to Fed. R. Civ. P. 56(f).[1] For the following reasons, the defendants' motions are granted and plaintiffs' motions are denied.

## BACKGROUND

### I. **Flora v. Firepond & Robertson**

In 1997, plaintiff George Flora ("Flora") entered into an agreement with defendant Firepond, Inc. ("Firepond"), under which Flora received stock options from Firepond as payment for personnel placement services Flora performed for Firepond. Flora agreed to accept 150,000 shares of stock at a value of $2.63 per share as his fee for $1,500,000 in first-year placement services. Under the agreement, Flora's options were to vest immediately and there were no limitations placed on his right to exercise the options.

After performing approximately sixty percent of the placements, Firepond asked Flora to execute a document memorializing the stock option agreement. Despite claiming that he

[1] For the convenience of the parties and the court, oral arguments on the motions were heard jointly. This order addresses motions pending in Civil No. 01-01988(DSD/AJB) and in Civil No. 02-01199(DSD/FLN).

disagreed with some of its terms, Flora executed the document. In October of 1998, after he had completed the remaining placements under the original agreement, Flora signed a second stock option agreement form on substantially the same terms as the first agreement. By that time, Flora held options on 150,000 shares of Firepond stock.

In November of 1998, Firepond officials informed Flora that Firepond was going to become a publically traded company. Flora was also informed that, as condition of going forward with the Initial Public Offering ("IPO"), the underwriter required that all existing shareholders and option holders execute a 180-day lock-up agreement.[2] Defendant Robertson Stephens, Inc. ("Robertson") was the primary underwriter for the IPO. On November 11, 1998, Flora executed a lock-up agreement preventing him from exercising his options for a period of 180 days following the date of the IPO. The IPO took place on February 4, 2000.

After jumping to over $100 per share immediately after the IPO, the value of Firepond stock fluctuated dramatically. During the 180 day lock-up period, Flora inquired whether it was possible to shorten the term of the lock-up. He was told that the lock-up agreement could not be modified. By the end of the lock-up period the price of Firepond stock had fallen to $17.75 per share. The

---

[2] Lock-up agreements help stabilize stock value during the initial period following a public offering by keeping prior issued shares and options off the market.

value has continued to fall since that time. Flora did not exercise his options at the end of the lock-up period.

Flora later learned that not all shareholders and option holders had executed lock-up agreements and that some of them may have sold stock or exercised options at more favorable prices than have been available since the lock-up period ended.

Flora filed suit in federal court naming both Firepond and Robertson as defendants, alleging negligent misrepresentation, fraud, breach of contract and violations of the Minnesota Securities Act, the Minnesota Consumer Fraud Act, the federal Securities Exchange Act of 1934, the Securities Act of 1933 and tortious interference with contract.

## II. Syverson v. Firepond and Robertson

Plaintiff Jay Syverson ("Syverson") was employed by Firepond and its predecessor Clear With Computers ("CWC"). Syverson received stock in CWC and Firepond as a condition of his employment and was a shareholder before the company went public on February 4, 2000. Like Flora, Syverson was informed that prior to the IPC all shareholders would be required to execute lock-up agreements. When Syverson objected to the terms of the lock-up agreement, Christian Misvaer, a staff attorney at Firepond, told him that the agreement was mandatory, that time was of the essence and that every shareholder and option holder would be required to execute a lock-up agreement or the IPO might not go forward. Finally, Syverson

alleges that Misvaer told him that if he did not sign the lock-up agreement, Syverson might have difficulty exchanging his CWC shares for Firepond shares.

Syverson also received a letter from Thomas Carretta, Firepond's general counsel, announcing Firepond's plan to go public. Included with the letter was a copy of the lock-up agreement and a return envelope and airbill. The letter reiterated the underwriter's requirement that all shareholders execute the lock-up agreement before the IPO would go forward.

Syverson claims that he conditioned his execution of the agreement on Misvaer's assurance that Syverson would be informed if the lock-up agreements were not required of every shareholder or if they could be modified. Syverson contends that Misvaer agreed to that condition.

Like Flora, Syverson watched the value of his shares rise and then fall dramatically during the 180-day lock-up period. The value of Syverson's shares had dropped to $17.75 per share by the end of the lock-up period and later dropped to less than $2.00 per share.

Also like Flora, Syverson came to believe that despite Misvaer's and Carretta's assurances to the contrary, not all shareholders and option holders had executed lock-up agreements prior to the IPO. Syverson now asserts that some investors were allowed to sell their Firepond interests immediately after the IPO,

when the price was at its highest, while others were subjected to shorter lock-up periods. He brings substantially the same claims against Firepond and Robertson as does Flora.

**III. Procedural Posture**

Flora's complaint alleged negligent misrepresentation, common law fraud, breach of contract, violation of the Minnesota Securities Act, the Minnesota Consumer Fraud Act and §§ 10(b) and 17 of the Securities Exchange Act against both Firepond and Robertson. He also claimed that Robertson had violated § 20 of the Securities Exchange Act and tortiously interfered with his contract with Firepond. Syverson brings substantially similar claims against both Firepond and Robertson.

Firepond brought a motion for judgment on the pleadings on January 2, 2002. Robertson did not join in that motion. On March 15 and March 27, 2002, Flora brought motions to amend the complaint. Ruling upon the motions, the court granted Firepond's motion in part, dismissing Flora's claims of breach of contract, violation of § 10(b) and violation of § 17. The court denied Firepond's motion as to Flora's other claims, pending amendment of the complaint and further briefing by the parties. The court granted Flora's first motion to amend and denied the second motion to amend.

Firepond now renews its Rule 12(c) motion for judgment on the pleadings as to the remainder of Flora's claims and brings the same

motion as to Syverson's claims. Robertson moves for dismissal of all claims of both plaintiffs, pursuant to Fed. R. Civ. P. 12(b)(6).

**DISCUSSION**

While a motion for a judgment on the pleadings under Rule 12(c) differs from a motion to dismiss for failure to state a claim under Rule 12(b)(6), the standards for dismissal under each are similar. See Allstate Financial Corp. v. U.S. Postal Service, 860 F. Supp. 653, 655 (D. Minn. 1994). In either case, the court must take the allegations in the complaint as true, view the complaint in the light most favorable to the plaintiff and dismiss the claim "'only if it is clear that no relief can be granted under any set of circumstances that could be proved consistent with the allegations.'" Alexander v. Peffer, 993 F.2d 1348, 1349 (8th Cir. 1993)(quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). A defendant bringing a motion to dismiss on the pleadings must satisfy the court that there are no issues of material fact to be resolved and that defendant prevails as a matter of law. See Potthoff v. Morin, 245 F.3d 710, 715 (8th Cir. 2001).

Generally, when a court entertains a motion to dismiss and considers matters outside the pleadings, it is appropriate to treat the motion as a motion for summary judgment under Fed. R. Civ. P. 56. See Hamm v. Rhone Poulanc Rorer Pharmaceutical Inc., 176

F.R.D. 566, 570 (D. Minn. 1997). However, in addressing motions to dismiss under Fed. R. Civ. P. 12(b)(6) and 12(c), courts may consider "materials that are 'necessarily embraced by the pleadings,'" appear in the record of the case or are matters of public record without converting the motion to a summary judgment motion. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)(quoting Piper Jaffray Cos. v. National Union Fire Ins. Co., 967 F. Supp. 1148, 1152 (D. Minn. 1997)).

**I. Common Claims**

A number of the claims are common to both plaintiffs and both defendants. These include negligent misrepresentation, fraud, violation of the Minnesota Securities Act and violation of the Minnesota Consumer Fraud Act. Because both the claims and the underlying facts are similar, the court addresses them together.

**A. Negligent Misrepresentation**

To prevail on a claim of negligent misrepresentation, a plaintiff must show that the defendant owed him a legal duty and breached that duty. See M.H. v. Caritas Family Svcs., 488 N.W.2d 282, 287 (Minn. 1992). In the case of negligent representation, the duty of care arises only when a person supplies information "for the guidance of others in the course of a transaction in which [he] has a pecuniary interest, or in the course of one's business...." Safeco Insurance Co. v. Dain Bosworth, Inc., 531 N.W.2d 867, 871 (Minn. Ct. App. 1995). Further, a plaintiff must

also demonstrate that he or she reasonably relied on the purported misinformation. See Dakota Bank v. Eiesland, 645 N.W.2d 177, 180-181 (Minn. Ct. App. 2002)(citing § 552 of the Restatement Second of Torts).

Here, neither defendant was in the business of giving or selling investment advice. Firepond is a computer software enterprise that was preparing to make a public offering. It received instructions from its underwriters and passed that information on to shareholders. Robertson is an underwriter of private enterprises that are preparing to go public. Thus, neither is in the business of giving or selling advice to individual investors and neither owed a legal duty to Flora or Syverson. The preexisting relationships between Firepond and Flora and between Firepond and Syverson were bargained for and contractual, based on the exchange of services for stock or options. "Where 'adversarial parties negotiate at arms length, there is no duty imposed...." Safeco, 531 N.W.2d at 871 (adopting the view taken in other jurisdictions).[3] Similarly, neither Flora nor Syverson had a

---

[3] Flora asserts that he was somehow less sophisticated than Firepond's representatives and that the lock-up agreement was not the product of negotiation because it was offered on a take it or leave it basis, under the threat that if he refused to sign, the IPO might not go forward. The court finds neither argument persuasive. First, Flora was sophisticated enough to negotiate and perform multi-million dollar business agreements. Second, the court is not convinced that the lock-up agreement, in these circumstances, was a contract of adhesion. Even if it was a contract of adhesion, that fact alone does not create a special (continued...)

direct relationship with Robertson and neither claims to have sought investment advice from that entity.

Moreover, the agreements Flora and Syverson signed included an express provision allowing the underwriter to "waive any provision of this Lock-Up agreement without notice to any third party." [Davies Aff. Ex. B at 2.] Flora and Syverson cannot have reasonably relied on statements by Firepond or Robertson contrary to the express provisions of the written agreement they each signed.

Because Firepond and Robertson owed no duty of care to either Flora or Syverson and because Flora and Syverson did not reasonably rely on false statements negligently made by either defendant, plaintiffs' claims of negligent misrepresentation fail as a matter of law and must be dismissed.

**B. Common Law Fraud**

Flora and Syverson bring claims of common law fraud against Firepond and Robertson alleging that both defendants purposely misrepresented material facts. The elements of fraud must be pleaded with particularity. See Fed. R. Civ. P. 9(b). Under Minnesota law, a plaintiff must allege and prove defendant intended

---

[3](...continued)
duty of care where none otherwise existed. See Vierken by Johnson v. AMCO Ins. Co., 543 N.W.2d 117, 120 (Minn. Ct. App. 1996)(holding that contracts of adhesion are not voidable unless unconscionable); Safeco, 531 N.W.2d at 871 (not including adhesive contracts among circumstances under which the duty of care arises).

to induce reliance and that the reliance was reasonable. See Florenzano v. Olson, 387 N.W.2d 168, 174 n. 4 (Minn. 1986); Davis v. ReTrac Manufacturing, 149 N.W.2d 37, 38-9 (Minn. 1967). While the reasonableness of a party's reliance is generally a question of fact under Minnesota law, a complete failure of proof on the issue "renders all other facts immaterial." Nicollet Restoration, Inc. v. City of St. Paul, 533 N.W.2d 845, 848 (Minn. 1995)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

Here, the court finds that Flora's amended complaint fails to allege specifically how Firepond knew its assertions about the IPO were false when made. The amended complaint simply states in conclusory fashion that, "[t]he misrepresentations ... were made intentionally...." [Am. Compl. at ¶ 98.] Flora contends that Firepond employees must have known that some shareholders would refuse to sign lock-ups and the IPO would still go forward. That assertion is based on the affidavit of Jeffery Becker, an investment banker and former employee of defendant Robertson, who claims it is not uncommon for some IPO's go forward without complete lock-up participation. See Becker Aff. at ¶ 5.] However, the court is unwilling to infer that Firepond employees, who are not investment bankers, must have also known that fact.[4]

---

[4] To salvage the fraud claim against Firepond, Flora argues that because Firepond retained Robertson to underwrite the IPO, Robertson was Firepond's agent and that Firepond is therefore liable for Robertson's fraudulent statements regarding the lock-up (continued...)

Flora also fails to overcome the requirement that reliance on a fraudulent statement be reasonable. See Nicollet Restoration, Inc., 533 N.W.2d at 848; Davis v. ReTrac, 149 N.W.2d at 38-9. For the reasons discussed above, the express language of the lock-up agreement is directly contrary to the alleged assertion of defendants that the IPO would not go forward without one hundred percent lock-up participation. [See Davies Aff. Ex. B.]

Syverson's claim fails for the same reasons. Syverson contends that as experienced corporate counsel, Carretta and Misvaer must have known that Robertson would not require all shareholders to sign lock-up agreements. Yet he provides no basis for that belief, beyond the Becker affidavit. Becker's statement cannot impute an investment banker's knowledge to Firepond through Carretta and Misvaer. Further, in light of the express waiver included in the written lock-up agreement signed by Syverson, any reliance on prior statements of Carretta and Misvaer cannot be deemed reasonable. For these reasons, Syverson's claims of common law fraud must fail.

---

[4](...continued) agreements which Robertson made to Firepond and Firepond passed on to plaintiffs. The court finds no law supporting Flora's argument and therefore deems it to be without merit.

**C. Minnesota Securities Act § 80A.01**

Flora and Syverson also bring claims under the Minnesota Securities Act alleging fraud or material misrepresentation "in connection with the offer, sale or purchase of [a] security." Minn. Stat. § 80A.01. The purpose of the Act is to protect innocent investors from false claims about investment opportunities. See State by Spannaus v. Coin Wholesalers, Inc., 250 N.W.2d 583, 588 (Minn. 1976).

Plaintiffs' claims must fail, because lock-up agreements do not pertain to the sale of securities by defendants or the purchase of securities by plaintiffs. Here, the lock-up agreements were separately negotiated agreements pertaining to stocks and options plaintiffs already possessed. Rather than inducing plaintiffs to purchase, as is contemplated by the Act, the agreements limited the conditions under which plaintiffs could sell. Any statements by defendants were not in connection with the offer, sale or purchase of a security, as required by the statute. Therefore, the claims under the Minnesota Securities Act must be dismissed.[5]

---

[5] The court also agrees with defendants' assertion that any representations made in connection with the sale of securities must have been made at the time plaintiffs agreed to accept the securities as a form of payment for services rendered. Those statements would necessarily have been made outside the statute of limitations period and would not, in any case, have been made by Robertson.

**D. Minnesota Consumer Fraud Act**

The Minnesota Consumer Fraud Act ("CFA") allows courts to enjoin deceptive practices and misrepresentations made in relation to the sale of merchandise. See Minn. Stat. § 325F.69. Plaintiffs ask the court to read the statute broadly, arguing that the lock-up agreements, which were the subject matter of the alleged misrepresentations, were connected to the IPO, which in turn was a plan to sell securities. In support of their liberal reading of the statute, plaintiffs point to its remedial purpose and cite Meyer v. Dygert, 156 F. Supp. 2d 1081, 1086 (D. Minn. 2001). That case held that the CFA is to be construed more broadly than common law fraud. See id. However, the court finds Cooperman v. Barry Corp., 775 F. Supp. 1211, 1213 (D. Minn. 1991) to be more directly on point. In that case, the court refused to make an extended series of steps in order to connect representations to the sale of merchandise. The court, noting the absence of "a nexus between the fraud alleged and the sale of merchandise," held that the relationship between a manufacturer's representative and the manufacturer, although ultimately part of the sales process, was not sufficiently connected to the sale of merchandise to the consumer to fall within the statute. Id.

Here, the court finds a similar absence of a nexus between the alleged fraud, which was solely related to the lock-up agreements, and the eventual IPO, which related only to the sale of stocks and

options other than those covered by the lock-ups. Therefore, the court finds that plaintiffs have failed to make a cognizable claim against Firepond and Robertson under the Minnesota Consumer Fraud Act.

Further, private actions under the CFA are limited. Section 325F.70 limits remedies under the CFA to injunctive relief sought by the Minnesota Attorney General. See Minn. Stat. § 325F.70. Minnesota's "private attorney general statute" permits individuals standing in place of the attorney general to seek damages and attorney fees under the CFA in limited circumstances. See Minn. Stat. § 8.31(a); Collins v. Minnesota School of Business, 655 N.W.2d 320, 327 (Minn. 2003). However, such private actions may only be brought where they will benefit the public at-large. See Collins, 655 N.W.2d at 329-30 (citing Ly v. Nystrom, 615 N.W.2d 302, 314 (Minn. 2000)).

In Collins, because the fraud occurred in advertising that reached out to the public generally, the Court found that a private action would benefit the public. See Collins, 655 N.W.2d at 330. In Ly, the alleged fraud occurred in direct communications in a one-on-one negotiation. See Ly, 615 N.W.2d at 314. In that case, the Court found that a private action would not benefit the public. See id. As in Ly, the transactions here were limited to a finite group of shareholders and option holders. The communications took place directly between Firepond or Robertson and those investors.

The were no communications to the general public, nor was there any way for the non-shareholding public to participate in or be affected by the lock-up agreements. Since a private action would not benefit the public, plaintiffs have no private right of action under Minn. Stat. §§ 325F.68 and 8.31(a). Accordingly, the claims must be dismissed.

## II. Individual Claims

Flora's other claims against Firepond were dismissed by the court's order of July 10, 2002. Flora's related claims remain against Robertson. Additionally, Syverson's remaining claims against both Firepond and Robertson must be addressed.

### A. Federal Securities Exchange Act Claims

Flora claims Robertson violated §§ 10(b) and 20 of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder and § 17 of the Securities Act of 1933. Syverson brings a § 10(b) claim against Firepond and a § 20 claim against Robertson.

Section 10(b) of the Securities Exchange Act prohibits fraudulent or misleading conduct related to nationally traded securities. See 15 U.S.C. § 78i. As the court noted in its previous order, claims under § 10(b) and Rule 10b-5 must be filed within one year of the discovery of facts that would have put a reasonable investor of ordinary intelligence on notice of a possible fraud. See 15 U.S.C. §§ 78i(e) and 78m; Dodds v. Cigna Sec., Inc., 12 F.3d 346, 350 (2nd Cir. 1993). The court deemed

Flora to have had at least inquiry notice of the facts underlying his allegations by early 2000, but he did not file the action until October 31, 2001. Flora's § 10(b) and Rule 10b-5 claim against Firepond was therefore dismissed as untimely. The court finds that the same is true of Flora's § 10(b) and Rule 10b-5 claim against Robertson.

Syverson's § 10(b) claim is similarly flawed. Syverson's complaint states that he "discovered" in July of 2000 that not all investors had signed lock-up agreements and that others may have been released from such agreements before they expired. [Complaint at ¶ 4.][6] Yet Syverson did not file his complaint until May of 2002, nearly a year after the expiration of the statutory period. Therefore, Syverson's § 10(b) and Rule 10b-5 claim must also be dismissed as untimely.

Flora and Syverson also bring claims against Robertson under the controlling persons liability provisions of § 20 of the Securities Exchange Act. See 15 U.S.C. § 78t. That section creates joint liability for persons who control the activities of persons who violate the Act. See id. Absent a securities fraud

---

[6] Syverson now claims that the July 2000 date indicated in the complaint is a typographical error and that he only became aware of the potential fraud in July of 2001. Even so, the complaint also states the Prospectus was filed on February 4, 2000, in conjunction with the IPO. The Prospectus indicated that some shareholders had not executed lock-up agreements and the number of outstanding shares not covered by lock-ups. Thus, Syverson was on inquiry notice by February of 2000.

claim under § 10(b), there can be no § 20(a) controlling person liability. See Dodd, 12 F.3d at 350 n. 2 (stating that actions under § 20 are wholly derivative of other violations of the Act). Since the court has dismissed the plaintiffs' § 10(b) securities fraud claims, there is no predicate offense upon which the § 20 claims can be based. Therefore, they must also be dismissed.

Flora additionally brings a claim against Robertson under § 17 of the Securities Act of 1933. See 15 U.S.C. § 77q. Section 17 prohibits the use of fraudulent means in the interstate offer or sale of securities. See id. Because there is no private right of action for violations of § 17, the claim must be dismissed. See Shull v. Dain, Kalman & Quail, Inc., 561 F.2d 152, 155 (8th Cir. 1977) cert. denied, 434 U.S. 1086 (1978).

**B. Tortious Interference with Contract**

Finally, Flora brings a claim of tortious interference with contract claim against Robertson. "To establish a prima facie case of tortious interference with contract, a plaintiff must show: (1) the existence of a contract; (2) knowledge of the contract by the alleged wrongdoer; (3) intentional procurement of the contract's breach; (4) absence of justification; and (5) damages caused by the breach." Metge v. Central Neighborhood Improvement Ass'n, 649 N.W.2d 488, 500 (Minn. Ct. App. 2002). "'A successful claim requires proof of all five elements.'" Id. (quoting Bebo v. Delander, 632 N.W.2d 732, 738 (Minn. Ct. App. 2001)). Because the

court has dismissed Flora's breach of contract claim against Firepond, he cannot prove that Robertson procured a breach. Absent that necessary element, the claim must be dismissed.

**III. Plaintiffs' Motions to Defer Summary Judgment**

Both Flora and Syverson have brought motions to defer summary judgment pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. Rule 56(f) states:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may made such other order as is just.

Fed. R. Civ. P. 56(f).

Generally, when a court looks to matters outside the pleadings in connection with a motion to dismiss pursuant to Rule 12(b)(6), the motion is characterized as a Rule 56(c) motion for summary judgment. <u>See</u> <u>Inland Container Corp. v. Continental Ins. Co.</u>, 726 F.2d 400, 401 (8th Cir. 1984) <u>per curiam</u>; <u>Hamm v. Rhone Poulanc Rorer Pharmaceutical Inc.</u>, 176 F.R.D. 566, 570 (D. Minn. 1997). However, when the court considers only materials submitted in conjunction with the complaint or relied upon therein, the motion need not be addressed as a summary judgment action. <u>See</u> <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999)(quoting <u>Piper Jaffray Cos. v. National Union Fire Ins. Co.</u>,

967 F. Supp. 1148, 1152 (D. Minn. 1997)). A similar exception exists for motions to dismiss brought under Rule 12(c). In such cases, the court may rely on matters in the public record without converting the motion to a Rule 56(c) summary judgment motion. See Fabisch v. University of Minnesota, 304 F.3d 797, 802 (8th Cir. 2002); In re Green Tree Fin. Corp. Stock Litig., 61 F. Supp.2d 860, 868 (D. Minn. 1999), rev'd on other grounds, 270 F.3d 645 (8th Cir. 2001). Here, the court has only considered documents that were relied upon in plaintiffs' complaints or are matters in the public record. Therefore, plaintiffs' motions to defer summary judgment are denied as moot.

**CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

**In Civil No. 01-1988(DSD/AJB)**

1. Defendant Firepond's motion for a judgment on the pleadings [Doc. No. 36] is granted.

2. Defendant Robertson's motion to dismiss [Doc. No. 41] is granted.

3. Plaintiff's motion to defer summary judgment [Doc. No. 47] is denied.

**In Civil No. 02-1199(DSD/FLN)**

1. Defendant Firepond's motion for judgment on the pleadings [Doc. No. 10] is granted.

2. Defendant Robertson's motion to dismiss [Doc. No. 15] is granted.

3. Plaintiff's motion to defer summary judgment [Doc. No. 21] is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 28, 2003

David S. Doty, Judge
United States District Court