# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

---

No. 03-2410
02-1199 DSD/FLN
01-1988 DSD/AJB

---

Jay Syverson, *
*
Plaintiff - Appellant, *
*
v. *
*
FirePond, Inc., a Delaware Corporation; *
Robertson Stephens, Inc., a *
Massachusetts Corporation, *
*
Defendants - Appellees. *

---

No. 03-2415

---

Appeals from the United States District Court for the District of Minnesota.

George Flora, *
*
Plaintiff - Appellant, *
*
v. *
*
FirePond, Inc., a Delaware Corporation; *
Robertson Stephens, Inc., a *
Massachusetts Corporation, *
*
Defendants - Appellees. *

---

SCANNED
NOV 1 2004
U.S. DISTRICT COURT MPLS

Submitted: March 11, 2004
Filed: September 9, 2004

---

Before MURPHY, SMITH, and COLLOTON, Circuit Judges.

---

SMITH, Circuit Judge.

George Flora and Jay Syverson filed civil actions–seeking damages for fraud, negligent misrepresentation, and breach of contract–against FirePond, Inc. ("FirePond") and Robertson Stephens, Inc. ("Robertson"). Flora and Syverson appeal[1] the district court's[2] order dismissing their claims pursuant to Federal Rule of Civil Procedure 12(c). We affirm.

I. *Background*

A. *Flora*

Based on the procedural stage of the dismissal, we presume the facts alleged in the complaint to be true. In 1997, Flora orally agreed to supply personnel-placement services to FirePond[3] in exchange for stock options on FirePond securities. Flora agreed to accept stock options on 150,000 shares of FirePond stock in return for his first year of placement services. Per the agreement, Flora's options were to vest immediately and no limitations were placed on his right to exercise the options.

---

[1] Flora and Syverson each appealed the district court's dismissal of their respective actions, and their appeals were consolidated for our review.

[2] The Honorable David S. Doty, United States District Judge for the District of Minnesota.

[3] FirePond is a computer software company.

After performing approximately sixty percent of the placements, in May 1998, FirePond asked Flora to sign a document memorializing the stock-option agreement. Although he disagreed with some of its terms, Flora signed the document. In October of 1998, Flora signed a second stock-option agreement form that contained essentially the same terms as the first agreement. At this point Flora held options on 150,000 shares–with a value of $2.63 per share–of FirePond stock.

In November 1999, FirePond officials informed Flora that FirePond was to become a publically-traded company. Flora was also informed that–as a condition of going forward with the initial public offering ("IPO")–the underwriter required all existing shareholders and option holders to execute a "lock-up"[4] agreement. Robertson was the primary underwriter for the IPO. On November 11, 1999, Flora executed a lock-up agreement that prevented him from exercising his options for a period of 180 days after February 4, 2000, the date of the IPO. Based on FirePond's representations, Flora and all other stockholders faced the same conditions.

After skyrocketing to $100 per share, the value of FirePond stock fluctuated dramatically. By the end of the lock-up period the price of FirePond stock had fallen to $17.75 per share–and the stock's value continued to fall. Flora did not exercise his options at the end of the lock-up period. Instead, he waited until more than one year after the lock-up agreement had expired. By this time the stock's value was less than $1 per share. Flora later learned, contrary to the representation of FirePond, that not all shareholders and option holders had executed lock-up agreements. He also learned that some shareholders sold stock or exercised options at more favorable prices than the stock's initial post lock-up value of $17.75 per share.

---

[4] Lock-up agreements help stabilize stock value during the initial period following a public offering by keeping prior issued shares and options off the market.

B. *Syverson*

Syverson was employed by FirePond and its predecessor Clear With Computers ("CWC"). Syverson received CWC and FirePond stock in exchange for his employment services before the IPO. Like Flora, Syverson was informed that–as a part of the IPO–all shareholders were required to execute lock-up agreements. When Syverson objected to the terms of the lock-up agreement, Christian Misvaer, a staff attorney at FirePond, told him that the agreement was mandatory and that "time was of the essence." Misvaer also stated that without executed lock-up agreements from every shareholder and option holder, the IPO might not go forward. Misvaer also told Syverson that if he did not sign the lock-up agreement he might have difficulty exchanging his CWC shares for FirePond shares.

Additionally, Syverson received a letter from FirePond's general counsel, Thomas Carretta, announcing FirePond's plan to go public. Included with the letter was a copy of the lock-up agreement and a return envelope and airbill. The letter reiterated Robertson's requirement that all shareholders execute the lock-up agreement before the IPO would go forward. Syverson claims that he conditioned his execution of the agreement on Misvaer's assurance that Syverson would be informed if the lock-up agreements were not required of every shareholder or if they could be modified. Syverson contends that Misvaer agreed to that condition.

Like Flora, Syverson watched the value of his shares rise and then fall dramatically during the 180 day lock-up period. Like Flora's, the value of Syverson's shares had dropped to $17.75 per share by the end of the lock-up period and–because Syverson did not sell at the close of the lock-up period–his shares continued to drop in value to less than $2.00 per share. Also, like Flora, Syverson learned that–despite Misvaer's and Carretta's assurances to the contrary–not all shareholders and option holders had executed lock-up agreements prior to the IPO.

Syverson now asserts that some investors were allowed to sell their FirePond interests immediately after the IPO, when the price was at its highest, while others were subjected to shorter lock-up periods. He brought substantially the same claims against FirePond and Robertson as did Flora.

C. *Procedural Summary*

Flora filed suit in federal court. His complaint alleged negligent misrepresentation, common-law fraud, breach of contract, violation of the Minnesota Securities Act, the Minnesota Consumer Fraud Act and §§ 10(b) and 17 of the Securities Exchange Act against FirePond. With the exception of breach of contract, Flora alleged the same claims against Robertson. He also claimed that Robertson had violated § 20 of the Securities Exchange Act and tortiously interfered with his contract with FirePond. Essentially, Syverson's complaint against FirePond and Robertson mirrored Flora's.

FirePond filed a motion for judgment on the pleadings on January 2, 2002. Robertson did not join in that motion. On March 15 and March 27, 2002, Flora brought motions to amend the complaint. The district court granted FirePond's motion in part, dismissing Flora's claims of breach of contract, violation of § 10(b), and violation of § 17. The court denied FirePond's motion as to Flora's other claims, pending amendment of the complaint and further briefing by the parties. The court granted Flora's first motion to amend and denied the second motion to amend.

FirePond renewed its Rule 12(c) motion for judgment on the pleadings as to the remainder of Flora's claims and brought the same motion as to Syverson's claims. Robertson moved for dismissal of all claims, pursuant to Fed. R. Civ. P. 12(b)(6). The district court ruled that: (1) there was no negligent misrepresentation; (2) there was no common law fraud; (3) the Minnesota Securities Act was inapplicable; (4) the Minnesota Consumer Fraud Act was not violated; and (5) the statute of limitations

barred the securities fraud claim under § 10(b). The court granted judgment for FirePond and Robertson under Rule 12(c). This timely appeal followed.

II. *Discussion*

"We review a motion for judgment on the pleadings de novo. We accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000). Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law. *Faibisch v. University of Minnesota*, 304 F.3d 797, 803 (8th Cir. 2002). We also review de novo the district court's application of state law. *Lefler v. Gen. Cas. Co.*, 260 F.3d 942, 945 (8th Cir. 2001).

A. *Negligent Misrepresentation and Fraud*

First, Syverson and Flora argue that the district court erred in its dismissal of their negligent misrepresentation claims. The court found that the claims failed as a matter of law. In order to establish a claim for negligent misrepresentation, they were required to allege (and ultimately prove): (1) a duty of reasonable care owed by the defendant in conveying information; (2) a breach of that duty by negligently supplying false information; (3) reasonable reliance on the alleged misrepresentations, which reliance is the proximate cause of plaintiff's injury; and (4) damages. *Masepohl v. American Tobacco Co.*, 974 F. Supp. 1245, 1251 (D. Minn. 1997). The district court found that the negligent misrepresentation claims failed because no duty of care existed, no duty of care was alleged, and that neither Flora nor Syverson could prove reasonable reliance. If the district court correctly found either absence of duty or absence of reliance its dismissal will be affirmed.

As noted by the district court, in order to prevail on a claim of negligent misrepresentation, a plaintiff must show that the defendant owed him a legal duty and breached that duty. *M.H. v. Caritas Family Svcs.*, 488 N.W.2d 282, 287 (Minn. 1992).

In the case of negligent representation, the duty of care arises only when a person supplies information "for the guidance of others in the course of a transaction in which [he] has a pecuniary interest, or in the course of one's business . . . ." *Safeco Ins. Co. v. Dain Bosworth, Inc.*, 531 N.W.2d 867, 871 (Minn. Ct. App. 1995). Further, a plaintiff must also demonstrate that he or she reasonably relied on the purported misinformation. *Dakota Bank v. Eiesland*, 645 N.W.2d 177, 180–181 (Minn. Ct. App. 2002) (citing § 552 of the Restatement Second of Torts).

Syverson relies heavily upon *Caritas* to argue that FirePond and Robertson possessed a legal duty to inform him that not all shareholders had to sign the lock-up agreement and that the IPO would proceed even without all shareholder signatures. However, assuming arguendo that Syverson and Flora properly alleged a legal duty, their claims nonetheless fail because they cannot show that they reasonably relied on the misinformation that each claims to have received.

Flora's modified stock-option contract with FirePond was governed by a written agreement negotiated at arm's length between sophisticated business persons. Flora argues that he signed the subsequent agreement under duress. But, the facts even as alleged by Flora, do not reflect that the relevant communications overwhelmed Flora's free will. Syverson's choice to sign the lock-up agreement was not the product of coercion or the result of a contract of adhesion. Based upon the undisputed facts in this case, such reliance was not reasonable. Neither FirePond nor Robertson sold investment advice. In each case, their expertise lay elsewhere. The facts as alleged reflect a business decision, which hindsight shows imprudent, that was entered into after normal bargaining.

Flora and Syverson each signed the lock-up agreement that contained an express provision allowing the underwriter to "waive any provision of this Lock-Up agreement without notice to any third party." Thus, even if we were persuaded that Robertson–because of his special relationship with Flora and Syverson–owed a duty

of care, the claim still fails. Under these circumstances neither Syverson nor Flora could have reasonably relied on statements made by Robertson that were contrary to the express provisions of the written agreement, which Syverson and Flora each signed. *Crowell v. Campbell Soup Co.*, 264 F.3d 756, 763 (8th (Cir. 2001).Therefore, we are satisfied that the district court properly dismissed the claims of negligent misrepresentation because they fail as a matter of law. Syverson and Flora's fraud claims, which also require the same element of reasonable reliance, suffer the same fate.

B. *Breach of Contract*

Finally, Flora alone argues that FirePond breached the oral contract–to acquire unrestricted stock options in exchange for providing placement services–that he entered into with FirePond in February 1998. Flora later entered into two written "Stock Option Agreements" that contained numerous restrictions as to when Flora could sell the stock upon exercise of his options. Flora was aware of these restrictions–initially objecting to them. In response to Flora's concerns, FirePond offered to pay Flora the cash value of his services if he was not willing to accept the terms of the "Stock Option Agreements." He declined the substitute offer and signed the agreements, thereby consenting to the restrictions.

Below, Flora argued that these option agreements, which he signed in May 1998 and November 1998, constituted a breach of the February oral contract because they contained restrictions upon when Flora "could sell the stock following exercise of his options." The district court found that, although the written agreements Flora signed contained restrictions different from those allegedly communicated orally by FirePond, the "alleged oral contract . . . was superseded and replaced by the written stock option agreements willingly signed by Flora."

Flora's oral agreement and the written "Stock Option Agreements" covered the same subject matter but with clearly inconsistent terms. The later written agreement

controls. Thus, as a matter of law, we find that the May and November written agreements superseded the oral contract. Therefore, the district court properly dismissed Flora's breach of contract claim.

We note, however, that on appeal Flora argues that the purported oral contract was breached, not by his acquiescence to the written stock-option agreements, but by his acquiescence to the lock-up agreement. Flora claims that FirePond had a duty to "deliver unrestricted stock options that would be exercisable at the initial public offering." This theory, however, was neither alleged nor argued to the district court. And, as a general rule, we do not consider arguments or theories on appeal that were not advanced in the proceedings below. *Jolly v. Knudsen*, 205 F.3d 1094, 1097 (8th Cir. 2000). Accordingly, we will not consider Flora's revised breach of contract claim–whether Flora's acquiescence to the lock-up agreement constituted a breach of FirePond's purported promise to deliver unrestricted stock options.

For the foregoing reasons, the district court's dismissal is affirmed in all respects.

COLLOTON, Circuit Judge, concurring in part, concurring in the judgment in part, and dissenting in part.

I agree with the court's disposition of Flora's breach of contract claim, and I concur in the judgment affirming dismissal of the fraud claims against both defendants and the negligent misrepresentation claim against Firepond. I conclude, however, that Flora and Syverson adequately pleaded a claim of negligent misrepresentation against Robertson Stephens under Minnesota law, and I would reverse the judgment of the district court dismissing that claim.

The court concludes that Flora and Syverson failed to plead adequately a claim for fraud or negligent misrepresentation, because they could not reasonably have

relied upon the alleged misrepresentations upon which the claims are based. *Ante*, at 7. The court reasons that the express language of the lock-up agreement signed by Flora and Syverson is contrary to the alleged misrepresentations, and that any reliance on the alleged misrepresentations was therefore unreasonable. I respectfully disagree with this analysis.

Flora and Syverson alleged that Firepond represented to them that all shareholders, including those holding stock options, must sign the lock-up agreement before the initial public offering of stock would proceed. The lock-up agreement, by contrast, states that Robertson Stephens, as underwriter, may "waive any provision of this Lock-Up agreement without notice to any third party." These two statements are not antithetical. That every shareholder must sign the lock-up agreement is not inconsistent with the ability of the underwriter to waive a provision of the agreement *after* a shareholder has signed the agreement.

Stated differently, knowledge that the underwriter may waive the prohibition on selling shares for any shareholder who has signed the lock-up agreement is not the same as knowledge that not every shareholder must sign the lock-up agreement in the first place. Once a shareholder signs the agreement, he is at the mercy of the underwriter; the shareholder has no apparent bargaining power that might cause the underwriter to waive the prohibition. But if he knows that the underwriter may proceed with the public offering even though a handful of shareholders has refused to sign the lock-up agreement, then the shareholder may be able to engage in strategic behavior that allows him to remain free of the lock-up agreement without derailing the public offering. Flora and Syverson allege that they lost this opportunity due to misrepresentations, and the waiver provision in the lock-up agreement does not show that reliance on the alleged misrepresentations was unreasonable as a matter of law.

Nonetheless, I concur in the judgment affirming the district court's dismissal of fraud claims against both Firepond and Robertson Stephens, because I agree with

the district court that Flora and Syverson have not stated a claim for fraud with sufficient particularity to survive a motion for judgment on the pleadings. *See* Fed. R. Civ. P. 9(b). There is no allegation that Robertson Stephens made any false representation directly to Flora and Syverson. It is doubtful that appellants' general allegations that Robertson Stephens made misrepresentations "by and through its agents and employees," and that Robertson Stephens and Firepond shared information with each other to further the public offering, are sufficient to establish the existence of an agency relationship between Robertson Stephens and Firepond, such that Robertson Stephens could be held liable for alleged fraud by Firepond. *See Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 916-17 (8th Cir. 2001); *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999). Indeed, plaintiffs elsewhere in their compliant allege that Robertson Stephens was *the agent of Firepond* for purposes of the public offering.[5]

In any event, the complaints also do not contain sufficient allegations of fraud against Firepond. While they assert a misrepresentation by Firepond that all shareholders must sign the lock-up agreement, Flora and Syverson do not allege with particularity how Firepond knew that its representations were false when made. Merely alleging that Firepond employed experienced counsel who "knew or should have known" that fewer than all shareholders would be required to sign the lock-up agreement is not sufficiently particular to state a claim under Rule 9(b). *See Parnes*

---

[5] Flora and Syverson did not plead a claim of fraud based on a theory of "indirect representations." *See Kronebusch v. MVBA Harvestore System*, 488 N.W.2d 490, 496 (Minn. Ct. App. 1992); *Vikse v. Flaby*, 316 N.W.2d 276, 283-84 (Minn. 1982). As noted, the complaint alleged an agency theory, that is, that Robertson Stephens made misrepresentations "by and through its agents and employees." The district court made no mention of a theory of fraud by indirect representations, and appellants' brief on appeal argues only an agency theory without reference to *Viske* or *Kronebusch*.

*v. Gateway 2000, Inc.*, 122 F.3d 539, 549-550 (8th Cir. 1997); *Brown v. N. Cent., F.S., Inc.*, 987 F.Supp. 1150, 1155-1156 (N.D. Iowa 1997).

I also concur in the judgment affirming the district court's dismissal of the negligent misrepresentation claim against Firepond. Under Minnesota law, a party owes a legal duty of care in making representations only if it is "engaged in the business or profession of supplying guidance to others." *Safeco Ins. Co. of Am. v. Dain Bosworth, Inc.*, 531 N.W.2d 867, 871-73 (Minn. Ct. App. 1995). In an ordinary arm's-length relationship between parties to a contract, there is no duty of care that might give rise to a claim for negligent misrepresentation. *Id.* at 873. Flora and Syverson do not allege that Firepond was in the business of supplying guidance to others. The complaints show that the parties had an ordinary commercial relationship, and that Firepond communicated information to Flora and Syverson in the course of negotiating the lock-up agreements. Under those circumstances, the allegations are not sufficient to support a negligent misrepresentation claim against Firepond.

With respect to the negligent misrepresentation allegations against Robertson Stephens, however, I believe that Flora and Syverson have at least pleaded a sufficient claim under Minnesota law, and I would reverse the judgment dismissing these counts of the complaints. While it is true that Robertson Stephens is not in the business of giving or selling advice directly to individual investors such as Flora and Syverson, the complaints do allege that Robertson Stephens was in the business of underwriting public offerings for clients such as Firepond. Minnesota law recognizes that an underwriter is "generally in the business of supplying information for the guidance of its clients." *Safeco*, 531 N.W.2d at 872. The complaints also allege that Robertson Stephens made representations to Firepond with the knowledge that Firepond would communicate those representations to shareholders and option-holders whom Firepond approached about the lock-up agreement.

Flora and Syverson contend that through a chain of reliance, Robertson Stephens could be liable to them for making negligent misrepresentations to Firepond, which in turn communicated them to Flora and Syverson. This theory has support in Minnesota law. In *Bonhiver v. Graff*, 248 N.W.2d 291 (Minn. 1976), the Minnesota Supreme Court held that an insurance agent could recover from a negligent accountant based on a "chain of reliance" that involved a communication from the accountant to the state insurance commissioner to the agent. *Id.* at 302. The court concluded that the agent's "personal reliance, indirect though it may be through the commissioner, was reasonable . . . and sufficient to accord him protection against defendants' negligence." *Id.* at 303.

The Minnesota Supreme Court in *Bonhiver* did not venture to say where "the line will eventually be drawn" between those who can recover from a party who makes negligent misrepresentations and those who cannot. *Id.* The court subsequently recognized, however, that *Bonhiver* adopted the Restatement (Second) of Torts definition of negligent misrepresentation, *Florenzano v. Olson*, 387 N.W.2d 168, 174 n.3 (Minn. 1986), and the Restatement provides guidance in drawing the appropriate line. The Restatement defines the "persons for whose guidance the information is supplied," that is, the persons to whom a negligent defendant may be liable. Restatement § 552(2) & cmt. (h) (1977). According to the Restatement, "it is not necessary that the maker [of the negligent misrepresentation] should have any particular person in mind as the intended, or even the probable, recipient of the information." *Id.*, cmt. (h). Rather, it is enough that the maker of the representation knows that the recipient "intends to transmit the information" to "a particular person or persons, known to him, or a group or class of persons, distinct from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it." *Id.*

The Restatement approach has been applied to support a cause of action in situations comparable to that alleged in this case. For example, in *Reisman v. KPMG*

*Peat Marwick LLP,* 787 N.E.2d 1060 (Mass. App. Ct. 2003), investors who had relied on financial statements and SEC filings, which were prepared by an accountant for a company in which the plaintiffs invested, sued the accountant for negligent misrepresentation. *Id.* at 1062. Even though the *Reisman* plaintiffs had no direct relationship with the accounting firm, and only received the information through the company in which they were investing, the Massachusetts court held that the action was viable where a jury could infer that the accounting firm knew the investors would rely on its opinions and filings. *Id.* at 1077. Similarly, in *Hosford v. McKissack*, 589 So.2d 108, 111 (Miss. 1991), the Mississippi Supreme Court applied the Restatement view to hold that home purchasers could bring a negligent misrepresentation claim against a pest control company, even though the plaintiffs received the allegedly negligent inspection report from the seller of the home, because the pest control company should have foreseen that the homeowner's immediate purchaser would receive and rely on the report. *See also*, *e.g.*, *Marcus Bros. Textiles v. Price Waterhouse, LLP*, 513 S.E.2d 320, 326-27 (N.C. 1999).

Flora and Syverson alleged that Robertson Stephens made a negligent misrepresentation to Firepond, knowing that Firepond intended to transmit the representation to what the Restatement calls a particular "group or class of persons," namely, the shareholders and option-holders whom Firepond wished to sign the lock-up agreement. Under Minnesota law, which has adopted the Restatement approach to this tort, I conclude that the allegations are sufficient to survive a motion for judgment on the pleadings.

For the foregoing reasons, I would direct reinstatement of the claims of negligent misrepresentation against Robertson Stephens, but join the court in affirming the judgment as to all other claims.

---

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS. CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
THOMAS F. EAGLETON COURT HOUSE
ROOM 24.329
111 S. 10TH STREET
ST. LOUIS, MISSOURI 63102

MICHAEL E. GANS
Clerk of Court

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

October 28, 2004

Mr. Richard Sletten
Clerk
U.S. DISTRICT COURT, MINNESOTA
202 U.S. Courthouse
300 S. Fourth Street
Minneapolis, MN 55415

Re: 03-2410 Jay Syverson vs. Firepond, Inc.

Re: 03-2415 George Flora vs. Firepond, Inc.

Dear Clerk:

The mandate of this Court is being sent to the clerk of the district court, together with a receipt. The clerk of the district court is requested to sign, date, and return the receipt to this office.

Any district court records in this court's possession will be returned shortly.

(5175-010199)

Sincerely,

Michael E. Gans
Clerk of Court

cmd

Enclosure

(LETTER FOR INFORMATIONAL PURPOSES ONLY)

---

cc: Honorable David S. Doty
Kenneth R. White
Kevin O'C. Green
Thomas Franklin Nelson
Todd A. Noteboom
Monica Lynn Davies
Karen E. Wilson
Kerry L. Bundy

District Court/Agency Case Number(s): CIV 02-1199 DSD/FLN

District Court/Agency Case Number(s): CIV 01-1988 DSD/AJB